We'll turn to our next case, Citizens Insurance v. Risen. Mr. Candler, go ahead. Good afternoon. My name is Michael Candler. I represent Citizens Insurance Company. The district court ruled that Citizens owes coverage for the underlying automobile accident claims under two separate policies. I would like to address the Citizens umbrella policy first. It is well settled and the court held in the Zappone case that the disclaimer statute should not be construed so as to create insurance coverage that was never intended in the first instance. Waiver, statutory waiver should not be used where the claim fundamentally falls outside of the scope of the policy. With regard to the Citizens umbrella policy, it is clear that the vehicle was not within the definition of a covered auto. You need not go any further than that. It is also well settled that in construing insurance policies, you must look at the whole policy like any contract in order to construe what the intent of the parties was. And here, there is a clear definition, covered auto. And that is defined as only those autos to which underlying insurance applies. And that's at page 216. And here, the insured had an auto policy. It was with State Farm. And they chose not to schedule the State Farm policy on the Citizens umbrella policy. Therefore, the vehicle was never a covered auto under the umbrella policy. So under the Zappone holding and its progeny, Citizens was not obligated to issue a disclaimer because coverage never existed in the first instance. You're quoting from paragraph, subparagraph F when you say bodily injury arising out of any auto which is not a covered auto. That's the clause you're relying on. I'm relying on the definition of the term covered auto in the Citizens umbrella policy, which is at page 216. That's the definition of covered auto. Exactly. But what helps you, apparently, is the phrase bodily injury arising out of the ownership of any auto which is not a covered auto. That is from the policy exclusion. Exactly. Yes. So if the not covered auto is in the exclusion part, doesn't that mean you have to disclaim? We would say no because that only amplifies what the overall intent of this policy is. If you're an insurer... So you're both not covered and excluded? Yes. Yes. And that is possible. That is possible. Why would we want to read a policy to assume you wrote it that way? Well, you know, policies are often redundant. And it's not the first time that a claim falls outside of the scope of the policies insuring agreement and is also excluded. When you have intentional acts, intentional acts fall outside of the policies insuring agreement. Where is the language in the umbrella policy we look to to satisfy us that this auto is not covered? Well, it says that we will pay in excess of the retained limit for bodily injury to which this insurance applies. Automobile policies only afford coverage for covered autos. Which clause is that? Let's start with that. Where do we find that one? That is in the citizen's umbrella insuring agreement, which is at page 203 of the appendix. And if you look at the insuring agreement, it says we will pay on behalf of the insurer... Which clause are you reading from? One subsection lowercase a. One a. Yep. We will pay on behalf of the insurer the ultimate net loss in excess of the retained limit because of bodily injury or property damage to which this insurance applies. It's inviting you to look at the policy as a whole. Can you read that again? We will pay on behalf of the insured the ultimate net loss in excess of the retained limit because of bodily injury or property damage to which this insurance applies. It's inviting you to look at the policy. How would an insured look at the definition of a covered auto and see that the vehicle I am driving is not a covered auto and expect to have coverage? That is fundamentally illogical. Automobile policies express a covered auto or a non-covered auto. You read us something that uses the phrase to which this insurance applies. Yes. Where do we find the language that tells us to what does this insurance apply? Well, we submit that it's the policy as a whole, including the definition of who is an insured, and that's another provision that we cite. Who is an insured? We're not talking about the car anymore? Well, no. We can stick. There are two basic grounds that we point to that shows the intent that the vehicle is not a covered auto. One is the definition of the term covered auto, and this clearly was not a. Yeah, but a definition isn't going to tell you what's covered, is it? It does. Doesn't that have to be something in a policy that says we cover X? Well, I think the very definition itself tells you that this is not a covered auto. So I don't think you need to go further than that. However, in the section who is an insured, it also says that the policy also limits insured status only to those who are driving covered autos. So, again, who is an insured also supports the idea that there was no coverage fundamentally here. I mean, this is an example of just what the Zappone case tells you you should not do. This insured chose not to schedule his state farm auto policy on this umbrella policy. And by doing that, he didn't want to pay the extra premium. And by doing that, it was not a covered auto. So it's fundamentally outside the scope. And Zappone tells us that, you know, insurance law 3420 should not be applied so as to create absurd, you know, absurd, injust results. And when you say you invite us to look at the phrase to which underlying insurance applies, there was the claim, at least, that an underlying policy was the business owner's policy. Well, it's also our position that there is no coverage under that policy as well. However, a business owner's policy doesn't apply to a specific vehicle. It does apply to people and what they do. It doesn't like an auto policy. But if you're wrong, I mean, I appreciate you started with the umbrella policy. And I take it you'll get to the other policy. But if we were to agree with the district court that the business owner's policy applied here, then doesn't that satisfy the paragraph you just read us as far as underlying insurance? I would say no, Your Honor, because – and the district court agreed stating at least twice that this is not a covered auto. But by stating in the umbrella that a covered auto is an auto to which underlying insurance applies, that means when the policy is, in fact, issued, there is an underlying policy, auto policy, listed on the schedule of underlying insurance. But it doesn't say to which underlying auto insurance applies. It does not say that correct. However, as I would – general liability policies do not generally cover a listed auto. Auto policies – Well, but – now, wait a minute. You've got pages – you've got policies here which have scores of pages of detailed fine print. And you're inviting us to now say we're supposed to understand how they generally work? Well – I thought we were supposed to look at the precise language that your company carefully drafted. True, Your Honor. However, here when the policy says it is a vehicle to which underlying insurance applies, and that's a vehicle covered under a scheduled underlying policy. It doesn't say that. It just says to which underlying insurance applies. Well, I would submit, Your Honor, that that does not – that that does not mean that if a later – that if at a later time after the policy is issued, a court finds that there was a stopple and that, therefore, coverage is later created through an estoppel. That is not what is meant. No, no, no. I'm not suggesting it was later created. The argument is that from day one, the business owner's policy provided underlying coverage. Well, there, Your Honor, it did not, I would submit, because there was a clear auto exclusion in the business owner's policy, and there was a hired and non-owned auto endorsement, which states that that policy only affords coverage for hired and non-owned autos, and there's a clear auto exclusion. Well, if you're going to then rely on the exclusion, you need a timely disclaimer, don't you? Well, we submit that the hired and non-owned auto exclusion takes owned autos out of the insuring agreement of that policy. And as we argued in our brief, the hired and non-owned – the hired and non-owned auto endorsement refers to the actual insuring agreement and says that this policy affords coverage for hired and non-owned autos, thereby, through lack of inclusion, not covering owned autos. So, therefore, it was not excluded, it was non-included, and a disclaimer was not, in fact, required. However, we also argue that the insured never asked for the coverage under the business owner's policy, or at least citizens reasonably believed that they were not seeking primary business owner's coverage. And so we did disclaim coverage under the business owner's policy as soon as a clear claim in their pleading was made. Well, the district court thought you got notice in that first telephone conversation. Yes, she did. Why is she wrong about that? Because the timeliness of a carrier's disclaimer has to be viewed under all of the facts and circumstances, and the courts have held that it is rarely decided as a matter of law. It's usually an issue of fact. And here, the insured – the following day after that call, and that was made to Citizens Call Center, and the following day, an assigned claims adjuster called the insured in order to discuss, as the call center said, they will call you and discuss the specifics. At that time, the insured admittedly in his affidavit, he says he told the adjuster that we are putting you on notice because the auto carrier, State Farm, told us that we should make an umbrella claim. So wasn't it reasonable for citizens, at least that they had a good faith belief, that despite what was said in the first call, they are looking for the umbrella coverage? And also, it's so fundamentally not covered under the business owner's policy, and that's what this court held in its decision in the Braebender case, where the carrier did not disclaim under a homeowner's policy. There were three policies there. Well, he gave you the policy number. He gave you the number, right, in the phone call? I don't know. He may have had that policy number. Sure. There's no question about that, is there? It is all one policy number. Yes, exactly. It's one number applied to two policies. Is that usual in your business? Well, policies are now being packaged, you know, together so that Under one number or under one document? Under one number. It's issued together. However, as it does Well, isn't that the problem? Here's a guy calls you up and says, We're making a claim under this number, and the number covers two policies. And then you come in to us and say, Well, it didn't cover the second. The notice didn't cover the second policy. Well, we are If you had two numbers, your claim would be a lot better if he just said, We're claiming under the number of the umbrella policy. But your number covers both. However, they are two separate policies. And as the court below found, they are clearly separate policies. They have separate definitions, terms. I understand they are separate. But when the agent calls and says, We're claiming under this number, doesn't that give you notice that we're claiming under both policies? I believe the term he used was a general liability claim. That's another argument he made. The first argument is he used the number. Well, I don't recall, to be honest, if he used the number or if the call center person noted what the policy number was. But it was a very detailed call. I will give you that. However, do we just ignore what was said the following day? Maybe. Maybe. That's one of the issues in the case. If the use of the number and the reference to general liability was notice, it may be that what was said thereafter can't unring the bell. I would submit that you need to look at all of the facts and circumstances. Clearly, citizens had a good-faith belief. You may look at all the circumstances to see whether what was said was notice. Many courts have said that. But if the things said were notice, does it matter what happened thereafter? I would say yes, because — Why? Why, once a company gets what is notice, what difference what the conversation was later? Because it's a more specific, in-depth discussion, and because it was so fundamentally not covered under the GL policy, and that's what the Brabender Court said. Okay. Here you have the insured saying State Farm told us to call you to put us to — State Farm told us to call because they said to put the umbrella carrier on notice. Okay. Isn't that reasonable then for the insurer to assume that only the umbrella carrier? Thank you. Thank you, Your Honor. LeBair. Good afternoon, Your Honor. It's Larry Bair for the insurers and the injured person, Jason Tanner, and his wife. Pleasure to appear before all of you. Well, to begin at the end, Brabender doesn't have any application here. In that case, there was separate homeowners and a separate auto policy, and a call is made about an auto accident, and this court felt that it was reasonable for the insurer to believe this was an automobile policy claim, and that's just fair. Okay. So what did give them notice? Well, Jerry Pescoletti's telephone call on May 13, 2013, where he said, I'm putting you on notice as our general liability carrier, and at the end of the conversation — He used that phrase, right? General liability. He didn't say umbrella. He didn't say primary business owners. This is one general liability policy. It has coverage forms. It has a primary coverage form and an umbrella coverage form, which, by the way, is a true umbrella policy. It isn't like the umbrella policy in the Hasbani case that citizens as briefed ad nauseum, which specifically and repeatedly required over and over again that there be underlying insurance and that there would be only payment made in excess of the underlying insurance. This policy never requires any underlying insurance, and when Mr. Candler is reading the insuring agreement of the umbrella policy, he leaves off after the first sentence he reads. He leaves off and doesn't read where it says, I'm sorry, we will have the right and the duty to defend the insured against any suit seeking coverage for damages for such bodily injury or property damage when the underlying insurance does not provide coverage. That is what makes this a true umbrella policy. Page 203. Well, I have the actual coverage form. I'm sorry. What clause? It's the insuring agreement that you were discussing with Mr. 1A. 1A. The second sentence. The first sentence is excess coverage. The second sentence is umbrella. When the underlying insurance does not provide coverage, we will have the right and the duty to defend. The underlying insurance, and there is underlying insurance, the business owner's policy, in the same coverage and citizen's same policy, is underlying insurance. It's scheduled. It does not provide coverage. Schedule? It's in the schedule. Did you say the business one is scheduled? There is a schedule of underlying insurance in citizen's policy, and its own business owner's coverage is listed in that schedule. Where do we find that in the appendix? Your Honor, I don't have the appendix with me. I think the dog ate my homework. I couldn't find the appendix when I was getting ready to fly down here. But it's definitely there. Do you think there's a document that we will find in the appendix where the business owner's policy is listed in the umbrella policy? It's absolutely there, Judge. Absolutely there. And if you're not there, do you agree you lose? No. You don't? No. You don't have to be listed? Well, the agreement says we will have the right and duty to defend when the underlying insurance does not provide coverage. But nowhere is there any requirement for underlying insurance. However, I don't mind taking that wager with you because business owner's policy is listed there in the schedule of underlying insurance. Why don't you do this, Mr. Bair? Today is Tuesday. Why don't we, with the deadline of Thursday, since we can convey this electronically, why don't you send us a copy of the pages from the appendix to which you're referring? I'd be very happy to do that. With copies, of course, to opposing counsel. All right. That would be very helpful. Now, we go back to whether the business owner's policy, whether you gave notice of that, and you say it happened in the phone call. It happened in that phone call. The day after the phone call, Ms. Brown called up and said, we're checking on whether you're covered under the umbrella, right? No. No? No, Your Honor. What he said was State Farm told us we should notify our umbrella. Right, but I'm talking about what Ms. Brown told him the next day. No. Which he denies. I understand. He denies he said it. But she says, we're going to confirm coverage with the underlying policy and determine if any exposure for this loss under umbrella. That's what she says. All right. Now, you see, you've really gotten right to the nub of this thing. By that time, she had already analyzed coverage under the business owner's policy and decided mistakenly. Oh, you think she was saying, we're going to look to see if the umbrella applies in addition to the business owners? No, Your Honor. Oh, I thought that's what you just said. Before that took place, that entry in her notes that you're talking about, she made a list of potential additional coverages. In that list she made is the primary business owner's policy, its own primary policy, and its umbrella policy. Then she goes on to talk about, in her notes, there's a hired non-owned auto endorsement. And she, in her mind, thought that the crucial question was, is this a hired or a non-owned auto, in which case there could be coverage. But when she determined by talking to Mr. Pasquiletti that it was an owned auto, in her mind that settled the whole question of coverage under the business owner's policy. There was none. She was right about that, wasn't she? No. Dead wrong. Dead wrong. You don't cover owned autos under that policy, do you? She's dead wrong because. . . Do you cover owned autos under that policy? Unless excluded. Unless excluded. The hired non-owned auto endorsement, as Judge Staney correctly understood. . . Wait a minute. Unless excluded. Do you cover owned autos under the business owner's policy? They're covered unless excluded. They're in the insuring agreement. Coverage is the sum of the insuring agreement less the exclusions. That's the traditional understanding of an insurance policy. You don't look at the whole thing and see what it is as a whole, the gestalt of the policy. It's the insuring agreement less the exclusions. I'll try again. Do you cover owned autos under that policy? They're covered. . . They're excluded. So then you don't cover them. Because of an exclusion. Therefore, there should have been a prompt denial. And the fact that in their answer to. . . No, no. In their complaint, they sued us in federal court, hoping for a favorable forum, no doubt. Nothing intended there. But they brought suit against us. They sued us. And they alleged as, quote, an alternative grounds for disclaiming that there's the exclusion. We're talking about the primary policy right now, aren't we? I think that's. . . You tell us. You can talk about either one you want. Which one are you talking about? Well, I was addressing your comments, Judge. I'll talk about them all. But the umbrella policy definitely provides coverage for an automobile accident. . . Any automobile accident for which the insured may be liable unless there's an exclusion, which there is. Is that what it says? Yes, it does. Tell me where it says. . . In the insuring agreement, it says, we will pay. Where are you reading from now? The first line of the insuring agreement. What pay? Section 1A of coverage form 1. . . The we will pay language. The we will pay. That's the insuring agreement. To which this insurance applies. Applies. And to get beyond that, to see to what it applies, you go to the exclusions. I've been litigating coverage for . . . You do? . . . 25 years. And that's what you do. Exclusions. Well, the exclusions are . . . they follow. They begin on . . . No. They follow on . . . On page 204. This insurance does not apply to . . . There you go. That's how we know what it applies to. This is a broad insuring agreement. That's what it doesn't apply to. Right. It applies to . . . To which this insurance applies. Right. Bodily injury and property damage. Shouldn't that direct us to a clause that tells us to which it applies? Judge, this is how insurance policies are built. Coverage agreement, exclusions. I pick up my policy and I look to see what I'm covered. I don't see it. But I see what I'm not covered. And so that tells me what I'm covered? Yes. Is that how it works? Well, yes, it does. That's true. For example, if you have a homeowner's policy . . . That's an interesting way to read a policy. It's not my way. This is the law of many decades, many, many decades, Your Honor. That coverage comes from the app, from what's not in the exclusion. Is that it? Pretty much. Pretty much. As it were. Pretty much, Judge. That's . . . You don't start with a policy that says we cover . . . If your house burns down, we cover you. And then there's an exclusion. Of course, if you started the fire by arson, we don't cover you. But it starts with a coverage clause, doesn't it? The coverage clause is always broad. And then . . . That's all I'm asking you. Where is that broad coverage clause? Well, in the umbrella policy, it starts out . . . No, no, no. We were talking about the . . . you shifted. All right. If you want to use the umbrella, use that one. They're the same. Basically the same. So, which is the broad coverage of the umbrella policy? Just tell me where it is. Well, the first sentence where it says, we will pay . . . to which this insurance applies. And then how do we know what that is? You look at the exclusions. That's how it works, Judge. That is how it works. Catch-22. So, I'm the poor little customer, and I have an insurance agent. And it says . . . it directs my attention to which this applies. And I say, all right, what does . . . what clause makes it apply? And he says, well, you look to see where it doesn't apply. That's how it works. That's how it works. The exclusions tell the insured where they're not covered, for what they're not covered. That is how it works. I've been at this for several decades, Judge, and that is how . . . that is it. Maybe you could help us by taking all of these questions under advisement. And since we're going to have some material sent to us by Thursday, why don't you consider Judge Newman's question further, and give us the benefit of your final position on what the policy is meant to apply to. That's . . . you know what? I'm pretty sure there's a New York Court of Appeals case that says exactly what I've been saying here. Oh, no, no, no. You can't do that. I mean, I practice in New York, and I was once told very definitively that there is nothing . . . there is no proposition of law which has not been the subject of a favorable opinion of a New York court. Well, I can't quote the Delphic Oracle, Judge. I've got to quote somebody. How do you leave the notice problem? Do you agree that it is the law that whether there was notice is to be determined under, quote, all the circumstances? No. You don't agree with that? No. That's hogwash, Judge. Only look at some of the circumstances? Notice happens when it happens. He calls up, we're putting you on notice as our general liability carrier. So, what if the next day he says State Farm said we should notify our umbrella carrier? He's just explaining to her what State Farm had said. Meanwhile, she's not dissuaded by him saying that. She is analyzing the primary policy. And she is deciding because of the hired non-owned auto endorsement, it doesn't apply. So, your notice argument stands on that phone call? Of course. Right. And you don't think there's any factual dispute as to the meaning of that phone call? No. No. How could there be? It's crystal clear. How could there be? Who's going to testify to Jerry? She did what he asked her to do. She looked at the coverage under both the umbrella and the primary policy. She decided incorrectly that because the hired non-owned auto endorsement, which adds coverage, didn't cover this auto, she decided then there's no coverage at all under the business owner's policy. And that's the mistake that Citizens wants this court to replicate. I want to say something quickly. It's been said repeatedly that my client, Risen Foods, decided not to have an underlying auto policy. And they wanted to avoid the cost. It's not in the record, and it's not true. Their broker was put on notice of an error in that respect. It's not relevant to this appeal, and it shouldn't be considered. Thanks very much. Do we know on this record that the dollars involved for the business owner's policy, that the damages in the underlying case exceed that? The damages are catastrophic. Mr. Jason Tanner will never . . . Does anybody's brief tell us what the dollars are here? No. They don't. I would have thought in a case where everyone's fighting over an umbrella policy, people would tell us the numbers that show us that the umbrella policy was triggered. Well, I believe in my brief I did say, there are no numbers, Judge, but I did cite a case, New York Court of Appeals, a case that umbrella cover . . . any excess, and this is an excess umbrella policy, okay, where the coverage is obligated to provide a prompt disclaimer of coverage under the statute when it is apparent that the coverage may be triggered. That's not disputed by my opponent. Citizens knows Mr. Tanner's condition. The coverage is completely exhausted. I'm not doubting you that it may be covered. It's just odd to me that in an umbrella case, we're not given the numbers that show it's applicable. Well, there aren't any numbers. He's disabled for life. He's in a semi-vegetative state. He's got a wife and two kids. Is there a judgment in the underlying case? There is summary judgment. In the underlying case? There is summary judgment, no. For a dollar amount? Not valued. There hasn't been a determination? No. Why don't you give us a full account of this proceeding? I think it would be helpful. You mean it's summary judgment on liability only? Correct. Damage is yet to be determined? Where is the damage yet to be determined? That would have been a useful thing to tell us in a brief, too. Well, it's new. What? It's new news. When we briefed, summary judgment hadn't even been decided. Why don't you bring us up to date, all right, in your letter? Respond as you think appropriate to some of the court's questions and then give us that information. All right. I have a very difficult week ahead. Can I possibly have until Monday? Sure. Thank you. Thank you very much. We're very loose here. Thank you. As you see. Now, so Monday. And, Mr. Candler, you've taken more than the two minutes, but why don't you take a minute? Okay, thank you. We cited the case of Hezbollah against Nationwide, and we submit that that case is directly on point with regard to the citizen's umbrella policy. It was a virtually identical policy, although the verbiage is different because it's a personal umbrella. Both of those policies have the same maintenance of underlying insurance provisions. I don't know why Mr. Baer keeps saying that the citizen's umbrella did not require underlying insurance. It has a provision that says that the underlying insurance shall be maintained. So just like the Hezbollah case in which the Second Department found that because where the auto was not covered under a scheduled underlying policy, it's fundamentally not covered. And that policy had an exclusion just like ours, and the Second Department held that the carrier did not have to issue a license because it was fundamentally not covered under the umbrella. And under the business owner's policy, we would ask that the court look very closely at the hired and non-owned auto endorsement, which we submit takes owned autos out of the insuring agreement, making a disclaimer unnecessary because the policy fundamentally doesn't cover owned autos. Can I ask one other thing? When we get duty to defend cases, and the issue is, was the injury within the scope of coverage? There's usually a doctrine that says in duty to defend cases, if the injury might have been within the coverage, there is a duty to defend. You're familiar with that line of cases? Is there a similar line with respect to notice that triggers a duty to defend such that if the facts are such that it might be adequate notice, there's a duty to defend, or is that only a coverage issue? I'm not familiar with the notice rule. I will admit that notice is liberally construed. However, what we're saying is that the timeliness of citizens disclaimer, we issued a disclaimer as soon as we got the plea. I understand. Could you write? And so notice earlier. And so we submit, and there was case law that says the timeliness of the disclaimer must be viewed under all the facts and circumstances. And here the insured repeatedly told us and indicated to us, they were only looking for umbrella coverage, including the words of Mr. Pasquiletti. Also, they sent a pushback letter after the disclaimer in which they only cited the umbrella policy. No one ever asked except for that first call citizens reasonably thought this is an umbrella claim. All right. Thank you very much. Thank you. We reserve decision.